STATE v. STONE.

1. INDICTMENT—FALSE PRETENSE.—An indictment alleging that the defendant represented the horse he was trading to prosecutor to be sound in every respect should not be quashed on the ground that this allegation does not state a fact but a mere opinion. When the fact of the unsoundness of a horse is certain and the party stating it to be sound knows of the unsoundness and makes the statement with intent to cheat and defraud, it is a false representation.

Mr. JUSTICE WATTS *dissents.*

*State* v. *Delyou,* 1 Bay 353, *distinguished from this case. Is it overruled?*

2. FALSE PRETENSE.—The evidence in this case sustains the verdict in that it is susceptible of the inference that the defendant in swapping horses with the prosecutor represented his horse to be sound, when he knew it was nearly blind, with intent to cheat and defraud.

Before MEMMINGER, J., Laurens, Fall term, 1912. Affirmed.

Indictment against Frank Stone. Defendant appeals.

*Messrs. Richey & Richey,* for appellant, cite: 2 Bishop 255; 84 N. C. 751; 1 Bay 353; 77 S. C. 289.

*Solicitor R. A. Cooper,* contra.

September 1, 1913.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY.   The defendant was tried before a jury, and convicted of obtaining goods under false pretenses.

The indictment charged him with falsely pretending, that a certain bay horse was sound in every respect, which pretense he then and there knew to be false, whereby he obtained from Lander H. Willis one roan horse, the property of the said Lander H. Willis, of the value of one hundred and fifty dollars, with intent to cheat and defraud the said Lander H. Willis.

The first question that will be considered is, whether his Honor, the presiding Judge, erred, in refusing the motion to quash the indictment, on the ground that it did not state facts, sufficient to constitue a crime.

Section 220 of the Criminal Code (1912) provides, that "any person who shall, by any false pretense or representation * * * obtain from any other person any money, chattel * * * or other property * * * with intent to cheat and defraud any person of the same, shall be guilty of a misdemeanor." * * *

The allegation in the indictment, that the defendant represented, that the bay horse was sound in every respect, was not only the statement of a fact, and not of an opinion, but of a material fact, sufficient to render him liable for damages, in a civil action, if the statement was untrue.

The indictment charged that the defendant made this representation, knowing it to be false, with intent to cheat and

defraud the prosecutor, and thereby obtained from him one roan horse, of the value therein alleged.

The case of the *State* v. *Hicks,* 77 S. C. 289, 57 S. E. 842, shows that the motion to quash the indictment was properly refused. In construing the statute, the Court in that case, said : "It is perfectly manifest from the express terms of the statute, that an intent to cheat and defraud, is an essential element of the statutory crime, and it is elementary that every essential element of the crime must be alleged and proven. This principle was well understood by the prosecuting officer, for the indictment not only alleges that the pretenses were known to be false, but that the defendant thereby intended to cheat and defraud."

Turning to the appellant's authorities we find, that he quotes the following language from Bishop on Criminal Law, vol. 2, section 454 (7th Ed.), under the head of false pretenses :

"If we look to the reason of the law, and especially to its words, we shall see that its aim is to prevent cheating, and the specific cheat denounced, is the one affected by a false pretense. Now, a mere opinion is not false pretense; but any statement of a present or past fact is, if false. When two men are negotiating a bargain, they may express opinions about their wares to any extent they will, answering, if they lie about the opinions, only to God, and to the civil department of the law of the country. But when the thing concerns fact, as distinguished from opinion, his words in reason amount to a false pretense."

The words of the indictment constitute the false statement of an existing fact, at the time of the exchange of horses. While there are many cases, as to the soundness of a horse, in which there can be no certain knowledge, still there are also numerous cases in which the fact of unsoundness, may be as certain as in any other instance. When the fact of unsoundness is certain, and the party making a statement in regard to it has knowledge of such fact, and nevertheless

makes a false representation, with intent to cheat and defraud, it would be against public policy, to allow him to escape punishment under the criminal law.

The language hereinbefore quoted from Bishop on Criminal Law, sustains our conclusion as to the sufficiency of the indictment.

The appellant's attorneys also rely upon the case of the *State* v. *Delyon*, 1 Bay 353. The report of that case is very short and is as follows:

"The defendant in this case, was indicted under the swindling act, for selling a blind horse as and for a sound horse, excepting a blemish in one eye, when the defendant had been told he was a blind horse, before the sale.

"The Attorney General contended, that this was an act of swindling under the late law for preventing such deceitful practices.

"The Court (present, Waties, J., and Bay, J.), after hearing counsel in reply, were of the opinion, that this was not such a fraud as was indictable, either at common law or under the act of assembly. That it had the appearance of a breach of contract, or rather a concealment of a blemish (if the defendant knew it) for which he was answerable in damages, in a civil suit. That to encourage a prosecution of this kind, would have a tendency to bring almost every civil injury, into the jurisdiction of the Court of Sessions, which might be extremely injurious in its consequences to the community."

There are material differences in the two cases. In the first place, it does not appear that the defendant in the Delyon case, knew that the horse was unsound, and in the second place, even if the defendant knew of the defect, it was regarded as rather a concealment of a blemish, which is passive or negative, and not a false pretense, knowingly made with intent to cheat and defraud, which is active and positive in its nature.

But, be that as it may, if that decision must be construed as holding, that a false representation of the soundness of a horse, made with knowledge of the fact, that the horse was unsound, with intent to cheat and defraud, then it will not be longer regarded as authority for that proposition; such a doctrine would tend to encourage fraud and swindling, and is against the canons of morality.

The next question for consideration is, whether there was error in refusal to direct a verdict, on the ground that there was no testimony tending to prove, that the defendant made any false representation, or that he had any intention to cheat and defraud.

· Lander H. Willis, the prosecutor, testified in substance, as follows: "The defendant and one W. N. Myers came to Gray Court in a buggy, driving a bay mare and leading a roan mare; the bay mare belonged to the defendant, and the roan mare belonged to W. N. Myers; Willis' roan horse matched Myers' roan mare, and the defendant wanted the pair for a prospective buyer. In the afternoon, the defendant offered to trade his bay mare, for prosecutor's roan horse, and asked $25 to boot. The defendant hitched his mare and Myers' mare to prosecutor's buggy, for him to see the mare work, and after driving around awhile, the prosecutor offered to trade even, but no trade was then made; thereafter the defendant offered to trade for $10 to boot; prosecutor would not agree to give him ten ($10) dollars, but said he would stick to his offer to trade even; the defendant said: 'Well, I will just make you trade anyway.' Prosecutor said, 'Now, remember you guarantee the horse to be sound, straight and work anywhere.' Defendant said, 'Yes;' prosecutor then turned to Mr. Owings and Mr. Stevens and said, 'I call you all as witnesses to that;' that the defendant said, 'Now, I have only had the horse ten days. I will guarantee it, as far as I know;' the prosecutor then told the defendant, 'If he had had the horse ten days, he had had it long enough to know, whether it was sound or

not.' Defendant then said to the prosecutor, 'Well, don't you want to try it?' prosecutor then said, 'Well, we will have to go over into the field to change, we can drive it over there, and I can let the negro plough it, to see how it ploughs.' The prosecutor and defendant went to the field, and the negro ploughed the mare, she ploughed all right, and the trade was made. The next morning, the prosecutor discovered, that the mare was blind in one eye, and could not see much out of the other, and wrote the defendant that he had put a blind horse off on the prosecutor. Not hearing from the defendant, the prosecutor swore out a warrant for the defendant."

Arthur Stevens, a witness for the State, testified in substance as follows: "That he and the prosecutor were in the store playing checkers; that defendant came in and said something about a horse swap; prosecutor said he would stick to what he had said; defendant said something about taking less; prosecutor said he would not do anything more than what he had said; defendant said, 'Well, I will just consider it a swap.' Prosecutor said, 'You have to guarantee the horse to be sound and all right, in every respect;' defendant said, 'He would so far as he knew.' Prosecutor turned to Mr. Owens and myself and called us as witnesses to it. Defendant said 'he would guarantee it so far as he knew;' and that is about all I heard of it. Defendant said he had only had the horse about ten days."

The agreement on the part of the defendant, that he would guarantee the horse to be sound, as far as he knew, was sufficient to render him liable in a civil action, whether the facts were such as to make him amenable to the criminal law or not. In order, however, to constitute the offense of obtaining goods under false pretenses, there must be, not only a false pretense or misrepresentation, but it must be made to cheat and defraud. The agreement to guarantee the soundness of the horse, so far as the defendant knew, when considered in connection with the other testimony, was suscep-

tible of the inference, that he intended his words as a representation, that if the horse was unsound he did not know it. Therefore, his knowledge of the unsoundness of the horse, was a material fact in the case. In the synopsis of the defendant's testimony, the following appears: "Defendant knew that the mare had defective eyes, knew her eyes were weak, did not know that one eye was entirely gone, did not know that the mare would likely go blind." In the synopsis of G. H. Moore's testimony we find the following: "While witness was examining defendant's horse, he, the witness, struck at the horse's eye, to see if it was blind. Defendant told witness not to do that, because Mrs. Willis was out there, and further said, that witness would have the horse blind, in both eyes, something like that in a joking way; witness examined the horse's eyes, and one looked like it was blind, the other eye looked fairly well." Pearly Moore, a witness for the defendant, testified in substance as follows: "Witness knows Frank Stone; saw him at Gray Court the day he traded horses with Lander H. Willis; saw defendant's blaze-face mare; noticed her eyes; one eye looked like it was out, the other eye looked like it might be all right; a person of ordinary intelligence could see, that there was something wrong with one of the mare's eyes."

It seems that the defendant was a horse-trader and that the prosecutor, Willis, rather relied upon the defendant's representation, than upon his own judgment as to the soundness of the mare.

The foregoing testimony amply sustains the verdict of the jury.

Judgment affirmed.

MR. JUSTICE WATTS *dissenting*. I dissent from the opinion of the Chief Justice, herein, and think the motion to quash the indictment should have been granted, as it did not state any criminal offense. The allegation that the defendant represented that the bay horse was sound could not be

any more than in the opinion of the party making the statement he was.    If he made a false statement knowing that he was, it might be sufficient to render him liable for damages in a civil action.    Parties trading horses are allowed latitude in expressing their opinion of their horses, and trade generally with intent each to get the better of the other, and under the evidence in the case the trial Judge should have directed a verdict of acquittal, as the evidence of prosecutor, himself, showed that the defect in the horse, complained of, was patent, not latent, and by the exercise of the slightest care, by examining and using his eyes, he could have ascertained that the horse's eyes were defective, and under the evidence and the case of *State* v. *Delyon,* 1 Bay 353, quoted by the Chief Justice, the motion of defendant to direct a verdict should have been granted.    That the State has succeeded in convicting the defendant on testimony, which, in my opinion, it is doubtful if the prosecutor could win in a civil suit for damages against defendant where he could recover if he make out his case, by a preponderance of the evidence only. For these reasons I dissent.